IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 14 2003

Robert M. March
CLERK

STUART H. MERRIAM,

Plaintiff,

vs.

CIVIL NO. 03-322 LFG/ACT

PRESBYTERIAN CHURCH
IN AMERICA, General Assembly,

Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING LIMITED WAIVER OF COSTS
## AND DISMISSING LAWSUIT WITHOUT PREJUDICE

### Waiver of Filing Fee

Plaintiff Stuart H. Merriam ("Merriam") seeks the Court's order authorizing him to proceed with this litigation without the payment of costs or fees. The *in forma pauperis* statute, 28 U.S.C. § 1915 authorizes a court to waive those fees. The intent of this statute is to guarantee, "That no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States solely because . . . [lack of funds] makes it impossible for him to pay or secure the costs [of litigation]." Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342, 69 S. Ct. 85, 90 (1948).

Merriam submitted an affidavit indicating that he is indigent. He is unemployed and receives Social Security income of $632.00 a month. He owns no real estate; owns no automobile; has no stocks, bonds or savings; and has no other assets to utilize in the prosecution of this litigation. Based



on Merriam's affidavit, the Court will authorize the filing of his complaint for damages without the payment of a filing fee.

### *Sua Sponte* Analysis of Complaint

While Congress removed barriers to court process for indigents by enacting the *in forma pauperis* statute, it also recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324, 109 S. Ct. 1827, 1831 (1989); Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1732-33 (1992). In response to this congressional concern, courts were authorized to dismiss an *in forma pauperis* complaint "if the court determines that . . . the action . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i) Accordingly, a court may conduct a *sua sponte* review of a complaint pursuant to this section, and may dismiss the complaint if it is patently obvious that the plaintiff cannot prevail on the facts alleged. Hall v. Belmon, 935 F.2d 1106, 1109 (10th Cir. 1991). However, if the defect is in the pleading, and the pleading may be cured by appropriate allegations, the dismissal of the complaint is generally without prejudice to the plaintiff filing a new complaint with valid allegations.

In reviewing a *pro se* complaint, the court applies the same legal standards applicable to pleadings drafted by counsel, but remains mindful that a *pro se* complaint must be liberally construed. Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992). It is with these standards in mind that the Court reviews Merriam's complaint for damages.

### Allegations of Federal Court Jurisdiction

Merriam attempts to invoke the Court's jurisdiction pursuant to various civil rights statutes, including claims brought under 42 U.S.C. § 1983. Section 1983 claims allow for court relief when

a party's federally protected rights have been violated by state or local officials or by other persons acting under color of state law. Thus, a person who asserts a claim for relief under § 1983 must satisfy two elements: (1) "the plaintiff must allege that some person has deprived him of a federally right," and, (2) "he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923 (1980); West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).

Merriam's lawsuit arises out of a claim that the General Assembly of the Presbyterian Church in America "Removed my credentials, as a teaching elder in the Presbyterian Church in America, without due process . . . ." (Complaint, ¶ 1). The removal of his credentials as a church elder apparently came after accusations of sexual misconduct were leveled against Merriam for which he was apparently convicted, although he contends his case was later "quashed and the sentence set aside."

Merriam alleges that the Presbyterian ecclesiastical courts were wrong to accept the false accusations of child molestation, and he goes on to list acts and omissions of the General Assembly which he contends constitute "an infringement of PCA's Book of Church Order."

Even if Merriam's allegations are true, he has failed to assert a claim for relief under § 1983. First, he has not demonstrated that he was deprived of a federally protected right. That is, there is no constitutional right to teaching credentials as an elder in the Presbyterian Church, nor to serve the church as a missionary. Even if Merriam were able to convince the Court that he had a constitutionally protected right to serve as a teaching elder and missionary in the Presbyterian Church, he would still have to satisfy the second prong of the Gomez v. Toledo test. That is, he would have to show that whoever deprived him of that right was acting under the color of state law.

3

Nowhere in the complaint does Merriam make this contention. To the contrary, in paragraph 3 of the Complaint, he specifically states that at the time of the deprivation, no defendant acted under the color of state, local, territorial or District of Columbia law. Thus, even taking Merriam's allegations as true, they are simply insufficient to satisfy the requirements for § 1983 litigation.

In sum, Merriam's complaint is deficient in that his assertions of federal jurisdiction are flawed, and those allegations which have been made are clearly not sustainable as a matter of law. Under these circumstances, Merriam's complaint is insufficient under Rule 12(b)(6).

### Free Exercise Clause and Establishment Clause

If Merriam was able to overcome the pleading problems discussed above, a far more substantial obstacle is presented that would still require dismissal. The obstacle concerns the First Amendment's guarantee of religious freedom from governmental interference. A court's scrutiny into matters of church affairs implicates the First Amendment, and a court is forbidden from inquiring into matters relating to the church's internal government and internal judicial process under the Free Exercise Clause of the United States Constitution. Jacobs v. Mallard Creek Presbyterian Church, Inc., 214 F. Supp. 2d 552, 555 (W.D.N.C. 2002). Moreover, due to the inherently religious nature of the decisions at issue, a federal court's inquiry into these matters would also violate the Establishment Clause of the United States Constitution.[1]

In Jacobs v. Mallard Creek Presbyterian Church, a former pastor's claims against the Presbyterian Church are remarkably similar to those advanced by Merriam. There, the pastor

---

[1] Establishment Clause analyses are similar to Free Exercise Clause analyses in cases such as this; both focus on the "degree to which government becomes involved in a particular church's governance and the inappropriateness of such involvement." Jacob, 214 F. Supp. 2d at 557-58 (internal citation omitted).

4

claimed that he was removed as a senior pastor at Mallard Creek based on allegations of sexual misconduct filed against him. After the allegations were made, the church's investigative committee seized information from Jacob's office, and scheduled a session meeting pursuant to the Book of Order to discuss the allegations. Information of the investigation was announced to the congregation by church officials, and Jacobs was ultimately forced to resign his position. Jacobs sued the church alleging breach of contract, defamation, slander, violation of his rights of privacy, and violations of provisions of the Electric Privacy Act (relating to seizure of materials from his laptop). He contended that the procedures followed by the Presbyterian Church pursuant to its Book of Order violated his rights.

It is clear that civil courts may decide church disputes in some cases, such as in property and some employment discrimination matters. Id. at 555. It is equally clear, however, that civil courts are prohibited from "resolving underlying controversies over religious doctrine." Id. (citing the leading U.S. Supreme Court decision in The Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 710, 96 S. Ct. 2372 (1976), reh'g denied, 429 U.S. 696 (1976), and Dixon v. Edwards, 290 F.3d 699 (4th Cir. 2002) "under the constraints of the First Amendment, when a subordinate in a church hierarchy disputes a decision of the highest ecclesiastical tribunal, the civil court may not constitutionally intervene")).

The Jacobs court reasoned that:

> [t]he rule of action which should govern the civil courts . . . is that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom or law have been decided by the highest of those church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and binding on them, in their application to the case before them.

Id. (*citing* Milivojevich, 426 U.S. at 710)(*quoting* Watson v. Jones, 80 U.S. 679 (1871)).

The issues Merriam seeks to litigate in this federal civil forum are questions of church discipline, rule, custom and church law. In Milivojevich, the United States Supreme Court held that there was no dispute "that question of church discipline and the composition of a church hierarchy are at the core of ecclesiastic concern." 426 U.S. at 717, 96 S. Ct. at 2384.

> In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters . . . . [T]he Constitution requires that civil courts accept their decisions as binding on them.

Id. at 724-25, 96 S. Ct. at 2387-88.

In rejecting Jacob's request that a federal court intervene and reinstate him as a pastor and clear his name, the Court eloquently stated:

> [I]n deciding the issues raised in Plaintiff's complaint, the Court would in essence be made to inquire into the church's decisions regarding its own internal management; and discipline of its clergy. Furthermore, if the Court did not agree with the procedure used and the effects therefrom, in holding the church liable, the Court would be substituting its laws and disciplinary action for that of the church. Each claim put forth by Plaintiff deals simply with the procedures and consequences resulting from the church performing its function of disciplining its clergy. In other words, although Plaintiff cites to various state courts' opinions which allow court inquiry into church actions that are not religious in nature, the United States Supreme Court and the Fourth Circuit have consistently held that churches must have "the power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.

Jacobs at 214 F. Supp. 2d. at 557.

6

So, too, here. Merriam's complaints require the Court to second guess decisions concerning who qualifies to teach as an elder in the Presbyterian Church or to serve as a missionary, and whether the process afforded Merriam through the Presbyterian ecclesiastic court system was appropriate. The United States Supreme Court advises in Milivojevich that these are matters simply outside the ambit of federal civil review.

Similarly, in Minker v. Baltimore Annual Conference of United States Methodist Church, 894 F.2d 1354, 1356 (D.C. Cir. 1990), the court held that the First Amendment prohibited it from determining whether plaintiff Minker was personally fit for a pastoral position. This is exactly the claim that Merriam raises here. He asks this Court to overrule the decision of the Presbyterian Church concerning his fitness to serve as an elder and as a missionary. In doing so, this Court would certainly offend the Free Exercise Clause which dictates that the church maintain its own governing autonomy. See Milivojevich, 426 U.S. at 718.

Indeed, any interference by a civil authority in matters such as these would result in the court hampering the ability of the Presbyterian Church to manage its own internal affairs. See, e.g., Church of Lukumi-Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 113 S. Ct. 2217 (1993)("Hamper[ing the] church's ability to manage its internal affairs" is violative of the Free Exercise Clause).

This Court concludes that with these insurmountable barriers, Merriam cannot re-plead a claim to state cause of action. IT IS THEREFORE ORDERED that Merriam's claim is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

7